THOMAS J. WEIS AND GLORIA J. WEIS, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 26336-88, 27525-88,     Filed March 21, 1990.
27526-88, 27527-88,
30233-88, 30235-88.

*Larry D. Blust, Paula Cozzi Goedert,* and *Antonina Prestigiacomo,* for the petitioners.

*Janine M. Poronsky* and *James R. McCann,* for the respondent.

---

[1]Cases of the following petitioners are consolidated herewith: Pat Savaiano, docket No. 27525-88; Pat Savaiano and Carol Savaiano, docket No. 27526-88; Pat Savaiano and Ann M. Liszak, formerly Ann M. Savaiano, docket No. 27527-88; Thomas J. Weis and Gloria J. Weis, docket No. 30233-88; and Thomas W. McNamara and Rita J. McNamara, docket No. 30235-88.

OPINION

FAY, *Judge:* Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows:

Docket No. 26336-88, Thomas J. and Gloria J. Weis:

| | | Additions to tax | | | |
|---|---|---|---|---|---|
| Year | Deficiency | Sec. 6653(a)(1) [2] | Sec. 6653(a)(2) | Sec. 6659 | Sec. 6661 |
| 1982 | $6,855 | $343 | * | $558 | $1,249 |
| 1983 | 5,836 | 292 | * | 457 | 1,078 |

Docket No. 27525-88, Pat Savaiano:

| | | Addition to tax |
|---|---|---|
| Year | Deficiency | Sec. 6659 |
| 1983 | $4,527 | $387.60 |

Docket No. 27526-88, Pat Savaiano and Carol Savaiano:

| | | Additions to tax | | |
|---|---|---|---|---|
| Year | Deficiency | Sec. 6653(a)(1) | Sec. 6653(a)(2) | Sec. 6659 |
| 1982 | $1,324 | $66.20 | * | $203.40 |

Docket No. 27527-88, Pat Savaiano and Ann M. Liszak, formerly Ann M. Savaiano:

| | | Addition to tax |
|---|---|---|
| Year | Deficiency | Sec. 6659 |
| 1981 | $9,387 | $1,209 |

Docket No. 30233-88, Thomas J. Weis and Gloria J. Weis:

| Year | Deficiency |
|---|---|
| 1984 | $1,917 |

Docket No. 30235-88, Thomas W. McNamara and Rita J. McNamara:

| | | Additions to tax | | |
|---|---|---|---|---|
| Year | Deficiency | Sec. 6653(a)(1) | Sec. 6653(a)(2) | Sec. 6659 |
| 1984 | $4,753 | $238 | * | $1,426 |

*50 percent of the interest due on that portion of the understatement attributable to negligence.

In docket Nos. 27525-88, 27527-88, and 30235-88 respondent also determined an increased interest rate applied under section 6621(c) for tax-motivated transactions.

---

[2] All section references are to the Internal Revenue Code of 1954 as amended and in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

At the time of filing petitions in these cases, petitioners' residences were located as follows:

| Docket No. | Petitioner(s) | Place of residence |
|---|---|---|
| 26336-88 | Thomas J. Weis and Gloria J. Weis | Westchester, Illinois |
| 27525-88 | Pat Savaiano | Glen Ellyn, Illinois |
| 27526-88 | Pat Savaiano and Carol Savaiano | Glen Ellyn, Illinois |
| 27527-88 | Pat Savaiano and Ann M. Liszak (formerly Ann M. Savaiano) | Glen Ellyn, Illinois and Missoula, Montana (respectively) |
| 30233-88 | Thomas J. Weis and Gloria J. Weis | Westchester, Illinois |
| 30235-88 | Thomas W. McNamara and Rita J. McNamara | River Forest, Illinois |

All further references to petitioners are to Thomas J. Weis (Weis), Pat Savaiano (Savaiano), and Thomas W. McNamara (McNamara).

During the years at issue in their respective cases petitioners were limited partners in Fabyan Investments, Ltd. (Fabyan), an Illinois limited partnership. At issue in these cases are petitioners' distributive shares of Fabyan's losses during those years. Specifically, the issues for decision are: (1) Whether Fabyan deducted the correct amount of interest in the years at issue; (2) whether Fabyan correctly computed the depreciable basis of the property at issue; (3) whether petitioners in docket Nos. 26336-88, 27526-88, and 30235-88 are subject to the additions to tax for negligence under section 6653(a)(1) and 6653(a)(2); (4) whether petitioners in docket Nos. 26336-88, 27525-88, 27526-88, 27527-88, and 30235-88 are subject to the addition to tax for a valuation overstatement under section 6659; (5) whether petitioners in docket No. 26336-88 are subject to the addition to tax for a substantial understatement under section 6661; and (6) whether petitioners in docket Nos. 27525-88, 27527-88, and 30235-88 are subject to an increased interest rate for tax-motivated transactions under section 6621(c).

Some of the facts have been stipulated. The stipulation of facts and the attached exhibits are incorporated by refer-

ence. For convenience, we have combined our findings of fact and opinion by issue.

## Interest Issue

Fabyan was formed to purchase approximately 120 acres of real property known as the McChesney Farm (the farm) located in DuPage County, Illinois. On January 9, 1981, Fabyan entered into a contract (the contract) to purchase the farm for $870,000.

Fabyan's purchase of the farm closed on April 16, 1981. Upon closing, Fabyan paid $187,500 to the sellers as a downpayment on the contract. This amount was in addition to earnest money in the amount of $17,500 paid by Fabyan on January 9, 1981.

Pursuant to the terms of the contract, the balance of the purchase price, $665,000, was to be paid by Fabyan to the sellers on or before April 16, 1987, in annual installments of not less than $11,500. If only the minimum annual installment was paid each year, the contract provided Fabyan would pay the contract's remaining balance as a balloon payment on April 16, 1987. The contract did not provide for the payment of interest.

Fabyan made the following payments under the contract:

| Payment date | Amount paid |
| --- | --- |
| May 24, 1982 | $11,500 |
| May 28, 1983 | 11,500 |
| May 18, 1984 | 11,500 |
| May 28, 1985 | 11,500 |
| June 4, 1986 | 11,500 |

During all relevant years, Fabyan was an accrual basis taxpayer. As imputed interest on the unpaid balance of the contract price, Fabyan deducted the following amounts:

| Tax year | Imputed interest deduction claimed |
| --- | --- |
| 1981 | $49,116.90 |
| 1982 | 49,116.90 |
| 1983 | 48,267.48 |
| 1984 | 49,116.90 |

Respondent disallowed the deductions claimed by Fabyan, determining the amount of interest deduction allowable for the years at issue to be:

| Tax year | Imputed interest deduction allowable |
|---|---|
| 1981 ................................. | - - - |
| 1982 ................................. | $3,735 |
| 1983 ................................. | 3,735 |
| 1984 ................................. | 3,735 |

The first issue for decision is whether Fabyan deducted the correct amount as interest expense for the years at issue. Petitioners have the burden of proof on this and all issues before us in these cases. *Welch v. Helvering,* 290 U. S. 111 (1933); Rule 142(a).

In general, interest paid or accrued on indebtedness during a taxable year is deductible under section 163(a). With respect to a deferred payment sales contract, if such contract does not provide for interest or provides for an unrealistically low rate of interest, a portion of the deferred payments will be imputed as interest, sections 483(a) and 483(c), and will be treated as such for purposes of section 163(a), section 1.483-2(a), Income Tax Regs.

The parties agree the contract for the farm's purchase comes within the purview of section 483,[3] and a portion of the contract price shall be treated as interest. However, the parties disagree concerning the amount to be imputed as interest for the years before us.

Petitioners acknowledge section 483 permits the imputing of interest under the contract. However, petitioners assert the amount of interest to be so imputed is determined without reference to section 483 or the actual payments made under the contract during the years at issue. Rather, petitioners assert the amount of interest to be imputed should be determined using section 461's accrual of interest rules generally applicable to an accrual basis taxpayer. That is, petitioners assert the amount of interest to be imputed each year is a ratable portion of the interest "economically accrued" over the life of the contract.

---

[3]Sec. 483 provides in relevant part:

SEC. 483(a). AMOUNT CONSTITUTING INTEREST.—For purposes of this title, in the case of any contract for the sale or exchange of property there shall be treated as interest that part of a payment to which this section applies which bears the same ratio to the amount of such payment as the total unstated interest under such contract bears to the total of the payments to which this section applies which are due under such contract.

Respondent argues interest imputed under the contract is determinable by reference to section 483 and the regulations thereunder. Respondent asserts section 483 provides imputed interest must be determined by reference to the actual payments made, without regard to the normally applicable rules concerning the economic accrual of interest, and without regard to section 461.

We agree with respondent. Petitioners' interpretation of section 483 is not supported by the statute itself, or the regulations or legislative history[4] concerning that section. Section 461 is a broad general rule concerning the timing of deductions. Section 483, on the other hand, provides a specific rule intended to apply to definite and limited circumstances. Congress clearly intended the specific enunciation of section 483 to control over the general rule of section 461. See *Bulova Watch Co. v. United States,* 365 U.S. 753 (1961). Accordingly, with respect to those payments to which section 483 applies, the imputing of interest under that section is done without regard to section 461 or the method of accounting generally used by a taxpayer.

The language of section 483 is clear and unambiguous. Pursuant to the plain meaning of that section, the interest to be imputed by a taxpayer in any given year is wholly dependent upon the payments made by the taxpayer during that year to which section 483 applies. Payments to which section 483 applies are defined by section 483(c) as follows:

(1) IN GENERAL.— * * * this section shall apply to any payment on account of the sale or exchange of property which constitutes part or all of the sales price and which is *due more than 6 months after the date of such sale or exchange* under a contract—

(A) under which some or all of the payments are due more than one year after the date of such sale or exchange, and

(B) under which, using a rate provided by regulations prescribed by the Secretary for purposes of this subparagraph, there is total unstated interest.

[Emphasis added.]

Section 483(b) provides:

the term "total unstated interest" means, with respect to a contract for the sale or exchange of property, an amount equal to the excess of—

---

[4] See H. Rept. 749, 88th Cong., 2d Sess. (1964), 1964-1 C.B. (Part 2) 196; S. Rept. 830, 88th Cong., 2d Sess. (1964), 1964-1 C.B. (Part 2) 605.

(1) the sum of the payments to which this section applies which are due under the contract, over

(2) the sum of the present values of such payments and the present values of any interest payments due under the contract.

The amount treated as interest under section 483:

is determined by multiplying each payment to which such section applies by a fraction, the numerator of which is the total unstated interest under the contract, and the denominator of which is the total of all the payments to which section 483 applies which are due under such contract. The effect of this ratio is to allocate the total unstated interest on a pro rata basis among the total payments to which section 483 applies. * * * [Sec. 1.483-1(a), Income Tax Regs.]

In the case at hand, section 483 applies only to the payments due under the contract more than 6 months after April 16, 1981, the date of sale. That is, section 483 only applies to the $665,000 balance due from Fabyan under the contract which was payable by April 16, 1987, in minimum annual installments of $11,500. The payments Fabyan made during 1981—$17,500 earnest money plus $187,500 down payment—are not payments to which section 483 applies. These payments were due on the contract's closing date, April 16, 1981, and were not "due more than 6 months after the date of such sale." Accordingly, no interest may be imputed under section 483 with respect to those payments, and no deduction may be claimed by Fabyan in 1981 as interest under the contract.

With respect to 1982, 1983, and 1984, Fabyan may deduct as imputed interest only a pro rata portion of the *actual payments* made under the contract during those years. The amount to be treated as interest with respect to those payments is that amount determined in accordance with the method established in section 1.483-1(a), Income Tax Regs. The calculation is as follows:

| Year | Payment due under the contract | Present value factor[5] | | Present value of payments |
|------|------|------|------|------|
| 1982 | $11,500 | × .93351 (9-15 mos.) | = | $10,735 |
| 1983 | 11,500 | × .87144 (21-27) | = | 10,022 |
| 1984 | 11,500 | × .81350 (33-39) | = | 9,355 |
| 1985 | 11,500 | × .75941 (45-51) | = | 8,733 |

[5]Sec. 1.483-1(c)(2)(ii)(B), Income Tax Regs., and Table IV of sec. 1.483-1(g)(2), Income Tax Regs.

| Year | Payment due under the contract | | Present value factor | | Present value of payments |
|------|------|---|------|---|------|
| 1986 | $11,500 | × | .70892 (57-63) | = | $ 8,153 |
| 1987 | 607,500 | × | .66178 (69-75) | = | 402,031 |
|      | 665,000 | | | | 449,029 |

| | |
|---|---|
| Total payments due under the contract | $665,000 |
| Less: total present value of payments | 449,029 |
| Total unstated interest | 215,971 |

$$\frac{\text{Total unstated interest}}{\text{Total payments due under contract}} = \text{percent of each payment made which is imputed to be interest}$$

$$\frac{215,971}{665,000} = 32.4768 \text{ percent}$$

| Year | Sec. 483 payments | Imputed interest percentage | | Imputed interest expense |
|------|------|------|---|------|
| 1981 | 0 | 0 × .324768 | = | 0 |
| 1982 | $11,500 | $11,500 × .324768 | = | $3,735 |
| 1983 | 11,500 | 11,500 × .324768 | = | 3,735 |
| 1984 | 11,500 | 11,500 × .324768 | = | 3,735 |

This is the method used by respondent in determining the amount of interest deduction allowable for the years at issue. Accordingly, we sustain respondent's determination on this issue.

## Depreciation Issue

The farm was originally comprised of five parcels: A, B, C, D, and E. Fabyan purchased an additional parcel of the farm, parcel F, for $3,000 per acre in 1982. Only parcels A and B contained improvements (collectively the improvements), consisting of a frame single-family residence (the frame residence), a brick single-family residence (the brick residence), and a one-story metal "butler" building (the butler building).

Prior to the anticipated closing date, April 16, 1981, Savaiano hired DiPentino & Associates (DiPentino) to appraise the land and improvements on parcels A and B. DiPentino issued an appraisal report (the DiPentino report) on March 20, 1981. DiPentino appraised the fair market

value of the raw land in parcels A and B to be $262,500 or $10,500 per acre.

DiPentino used a "cost approach" for purposes of appraising the improvements. DiPentino's "cost approach" can be summarized as follows:

First, compute the "estimated replacement cost" of the improvement under consideration. Replacement cost is defined in the DiPentino report as "the present cost of replacing the improvement with one of equal quality."

Second, subtract from the estimated replacement cost an amount representing "accrued depreciation." This step entails estimating the physical deterioration for the subject improvements by considering the improvements' then present condition and their then remaining economic life. Based on those estimates, DiPentino judged the improvements to have accrued an estimated percentage of physical deterioration. The improvements' estimated replacement costs were then reduced by that percentage to arrive at the "estimated depreciated replacement cost" for each of the improvements. To that amount DiPentino adds an amount for "the estimated depreciated value" of other miscellaneous improvements attendant to the improvement under consideration. The result is an "indicated value" for the improvement.

Using its cost approach, DiPentino appraised the improvements as follows:

### Frame residence

| | |
|---|---:|
| Estimated replacement cost | $53,736 |
| Less: Accrued depreciation estimated at 50 percent | − 26,868 |
| Estimated depreciated replacement cost for improvement | 26,868 |
| Plus: Estimated depreciated value of miscellany | +3,000 |
| Indicated value | 29,868 |
| Rounded to nearest thousand | 30,000 |

### Brick residence

| | |
|---|---:|
| Estimated replacement cost | $147,700 |
| Less: Accrued depreciation estimated at 65 percent | − 96,000 |
| Estimated depreciated replacement cost for improvement | 51,700 |
| Plus: Estimated depreciated value of miscellany | +3,000 |
| Indicated value | 54,700 |

### Butler building

| | |
|---|---:|
| Estimated replacement cost | $25,600 |
| Less: Accrued depreciation estimated at 66 percent | − 16,896 |
| Indicated value | 8,704 |
| Rounded to nearest hundred | 8,700 |

Under the contract, Fabyan and the seller allocated the contract price of $870,000 among the five parcels involved as follows:

| Parcel | Assigned value |
|---|---|
| A. | $96,000 |
| B. | 109,000 |
| C. | 202,573 |
| D. | 86,184 |
| E. | 376,243 |
| | 870,000 |

This allocation of the contract price was made without regard to the DiPentino report.

Upon closing, legal title to parcels A and B passed to Fabyan. Legal title to parcels C, D, and E was to be conveyed to Fabyan upon payment of the remainder of the contract price. However, Fabyan was entitled to take immediate possession of the entire farm.

Even though the farm's purchase did not close until April 16, 1981, Fabyan's income tax returns for the years at issue represent the farm was placed in service by Fabyan on January 9, 1981. Fabyan claimed depreciation deductions for the improvements in the following amounts:

| Tax year | Depreciation claimed |
|---|---|
| 1981 | $26,760 |
| 1982 | 22,300 |
| 1983 | 20,070 |
| 1984 | 17,840 |

The depreciation deductions claimed were computed by using an adjusted basis for the improvements in the amount of $223,000.

We must decide the correct depreciable basis for the improvements. In general, the depreciable basis of property is its cost. Secs. 167(g), 1011(b), and 1012. However, when a combination of depreciable and nondepreciable property is purchased for a lump sum, the lump sum must be allocated between the two types of property to determine their respective costs. In making such allocation, the basis of the depreciable property cannot exceed an amount which bears the same proportion to the lump sum as the value of the depreciable property at the time of acquisition bears to the

value of the entire property at that time. Sec. 1.167(a)-5, Income Tax Regs.

Despite the values assigned the different parcels by Fabyan under the contract, petitioners assert the raw land of parcels A and B had a fair market value of $262,500 on the date of purchase. That amount was the value assigned to the raw land of those parcels by the DiPentino report. Petitioners next assert the raw land in parcels C, D, and E had a fair market value of $4,000 per acre, or $380,000. The total fair market value of the raw land of the farm, petitioners opine, equals the sum of those two figures, $642,500. Petitioners subtract that amount from the purchase price of the farm, which petitioners assert is $870,000, to arrive at a purported fair market value, i.e., an alleged depreciable basis, for the improvements on the date of acquisition in the amount of $227,500, an amount even greater than the depreciable basis originally claimed on Fabyan's returns, $223,000.

Respondent asserts parcels A and B and the improvements thereon were purchased by petitioners for a lump sum in the amount of $205,000. That was the total amount paid by Fabyan, as of the contract's closing, as earnest money and downpayment. Respondent reasons, since Fabyan obtained legal title to parcels A and B upon closing, Fabyan's purchase price for those parcels was $205,000. As further support for his position, respondent points to the allocation under the contract of the contract price among the five parcels purchased.

Respondent next asserts the improvements had a fair market value on the date of purchase equal to their indicated value as appraised by the DiPentino report. That is, respondent asserts the improvements' fair market value is computed as follows:

| | |
|---|---:|
| Indicated value frame residence | $30,000 |
| Indicated value brick residence | 54,700 |
| +Indicated value butler building | +8,700 |
| Improvements' indicated value | $93,400 |

Respondent also contends the land in parcels A and B had a fair market value of $262,500, as appraised by the DiPentino report. With these appraised values, respondent computes the fair market value of the improvements and

the raw land comprising parcels A and B to be a total of $355,900 on April 16, 1981. Respondent concludes the alleged cost of parcels A and B, $205,000, should be allocated to arrive at a depreciable basis for the improvements as follows:

$$\begin{array}{ccccc} \text{lump sum} & \times & \dfrac{\text{value of depreciable property}}{\text{value of entire property}} & = & \text{depreciable} \\ \text{payment} & & & & \text{basis} \\[2ex] \$205{,}000 & \times & \dfrac{\$93{,}400}{\$355{,}900} & = & \$53{,}799 \end{array}$$

We do not agree with either party entirely. Petitioners make several errors in determining the fair market value of the improvements on the date of acquisition. First, petitioners allocate the entire contract price for the farm, $870,000, between the farm's land and the improvements. Doing so ignores the element of interest imputed under the contract and deducted by Fabyan.

Second, petitioners provide no evidence supporting their assertion that the land in parcels C, D, and E had a fair market value of $4,000 per acre on the date of acquisition. Although petitioners point to the subsequent purchase of parcel F for $3,000 per acre as support for their position, petitioners provide no evidence showing the land in parcels C, D, and E to be worth the asserted $1,000 more per acre than the land in parcel F. The only evidence presented on this point was the self-serving testimony of one of the petitioners, someone we find is not qualified to render such an opinion.

On the other hand, we do not agree with respondent that the purchase price for parcels A and B was $205,000. Although Fabyan received legal title to those parcels upon closing and after paying to the sellers $205,000, this amount is not necessarily the purchase price for those parcels. The purchase of parcels A and B was an integrated part of the contract concerning the purchase of the entire farm. It would not be proper in this case to separate the purchase of parcels A and B from the purchase of parcels C, D, and E. The contract must be viewed as an integrated whole and the purchase price under the contract must be allocated accordingly, among the imputed interest, the improvements, and the five parcels of raw land involved.

Further, we give no credence to the values assigned by Fabyan and the seller under the contract to the various parcels comprising the farm. We find those values were ascribed by the parties to the contract without consideration of the DiPentino report, and without any relation to economic reality. The DiPentino report appraised a value for parcels A and B, including the improvements, in the amount of $355,900. The contract assigns a value of only $205,000 to those parcels. Further, the allocation ignores the interest imputed with respect to the payments deferred under the contract.

Since the DiPentino report was "for the purpose of estimating the Market Value" of parcels A and B, we find the term "indicated value" in that report is synonymous with fair market value. We further find the DiPentino report to be the best evidence in this case of the fair market value of the improvements on the date of acquisition. Accordingly, we accept the DiPentino report's valuation of the improvements as a reasonable estimate and find the fair market value of the frame residence, the brick residence, and the butler building to be $93,400 ($30,000, $54,700, and $8,700, respectively) as of April 16, 1981. We also find Fabyan paid a purchase price for the improvements equal to their fair market values on the date of acquisition.[6]

## Additions to Tax

Weis, a certified public accountant, maintained Fabyan's records and prepared Fabyan's tax returns for taxable years 1981 through 1984. Weis's duties included providing Fabyan's partners with information concerning such partners' respective distributive shares of Fabyan's income, gain, loss, and deductions.

---

[6] With these values attributed to the improvements, the contract price for the farm can be allocated as follows:

| | |
|---|---|
| Unstated interest | $215,971 |
| Improvements | 93,400 |
| Raw land of entire farm | 560,629 |
| Total contract price | 870,000 |

The parties agree the value assigned to the raw land in parcels A and B by DiPentino, $262,500, is correct. Accordingly, the value of the raw land in parcels C, D, and E must equal $298,129 ($560,629 − $262,500). This amount represents a value for the land in parcels C, D, and E equal to $3,138.20 per acre ($298,129/95 acres), a value closely approximate to the value assigned per acre to the land in parcel F.

Savaiano and McNamara did not have any responsibility with respect to Fabyan's bookkeeping or tax return preparation. However, because McNamara is an attorney, Weis asked him whether it was proper to compute interest on an accrual basis ratably over the life of the contract. McNamara had no expertise in tax and asked a member of the tax department of his law firm, Larry D. Blust (Blust), to research the issue. Blust reported to McNamara, and McNamara to Weis, that imputed interest should be deducted on an economic accrual basis. That was the method used by Weis when filing Fabyan's tax returns for 1981, 1982, 1983, and 1984.

Weis reported on his Federal income tax returns for the years at issue his distributive share of Fabyan's income, gain, loss, and deductions, based on his own computation for those items. During the years at issue in their cases, Savaiano and McNamara reported on their respective Federal income tax returns a distributive share of Fabyan's income, gain, loss, and deductions, as those items were reported to them by Weis on Fabyan's behalf.

### Addition to Tax: Section 6653(a)(1) and 6653(a)(2)

We must decide whether respondent was correct in determining the additions to tax for negligence under section 6653(a)(1) and 6653(a)(2) applied in docket Nos. 26336-88, 27526-88, and 30235-88. Those cases concern Weis' 1982 and 1983 taxable years, Savaiano's 1982 taxable year, and McNamara's 1984 taxable year, respectively.

Section 6653(a)(1) imposes an addition to tax equal to 5 percent of any underpayment attributable in whole or part to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) imposes an addition to tax equal to 50 percent of the interest due with respect to that part of the underpayment determined under section 6653(a)(1) to be attributable to negligence or intentional disregard of rules or regulations.

The additions to tax imposed by section 6653(a)(1) and 6653(a)(2) may be avoided by a taxpayer if it is shown no part of any underpayment of income taxes was due to the taxpayer's negligence or intentional disregard of rules and

regulations in preparing a tax return. *Timothy v. Commissioner*, T.C. Memo. 1985-613. If a taxpayer shows good faith reliance upon the advice of a competent and experienced accountant or attorney in the preparation of the return, the addition to tax for negligence is inapplicable. *Conlorez Corp. v. Commissioner*, 51 T.C. 467, 474 (1968). To show good faith reliance, the taxpayer must establish that the return preparer was supplied with all necessary information and the incorrect return was a result of the preparer's mistakes. *Pessin v. Commissioner*, 59 T.C. 473, 489 (1972).

Fabyan's returns for the years at issue are informational returns only and could never have *underpayments* determined with respect to them. See sec. 6653(c)(1). Accordingly, even if Weis, Savaiano, or McNamara were negligent in regard to the preparation of Fabyan's returns for the years before us, they could not be subject to the additions to tax under section 6653(a)(1) and 6653(a)(2) with respect to those returns.

With respect to petitioners' individual income tax returns, we examine each petitioner's liability under section 6653(a) independently. This is because the underpayments resulting with respect to their personal returns are attributable in part to the interest issue and in part to the depreciation issue, and because each petitioner had different levels of involvement with respect to Fabyan's treatment of those issues.

We find Weis relied on the advice of Blust concerning the interest to be imputed under the contract for purposes of preparing and filing Fabyan's 1982 and 1983 tax returns. That advice was again relied upon by Weis when filing his income tax returns for those years. Accordingly, Weis is not subject to the addition to tax for negligence under section 6653(a)(1) and 6653(a)(2) by reason of his underpayment in 1982 and 1983 resulting from his deduction of a distributive share of Fabyan's improper interest deductions.

Weis did not rely on the advice of another when computing Fabyan's depreciation deductions for 1982 and 1983. Weis independently computed those deductions for Fabyan using a depreciable basis for the improvements which was not supported by any of the information available to Weis when preparing Fabyan's returns. We find

Weis acted negligently in doing so, especially in light of Weis' access to the DiPentino report's conclusions concerning the improvements' indicated values, i.e., the improvements' fair market values. Weis' negligence in preparing Fabyan's returns carries over to Weis' preparation of his income tax returns for the years at issue. Accordingly, in docket No. 26336-88 we hold Weis is subject to the addition to tax under section 6653(a)(1) with respect to his entire underpayment in 1982 and 1983. We further hold Weis is subject to the addition to tax under section 6653(a)(2) with respect to that portion of those underpayments attributable to his deduction of a distributive share of Fabyan's erroneous depreciation deduction.

Savaiano provided Weis with DiPentino's appraisal of the improvements. Weis in turn provided Savaiano with information concerning Savaiano's distributive share of Fabyan's deductions for interest and depreciation. Savaiano reasonably relied upon the information provided by Weis concerning those deductions and Weis' supposed expertise in tax matters. The underpayment resulting with respect to Savaiano's 1982 taxable year was the result of his reliance upon the information provided by Weis. Such underpayment was not the result of any negligence on the part of Savaiano. Accordingly, in docket No. 27526-88 we hold Savaiano is not subject to the additions to tax under section 6653(a)(1) and 6653(a)(2).

McNamara also relied upon the information provided him by Weis concerning McNamara's distributive share of Fabyan's income, gain, loss, and deductions when filing his 1984 tax return. McNamara further relied upon the advice of Blust in believing Weis properly computed Fabyan's interest deduction. Such reliance on the advice of experts makes the additions to tax under section 6653(a)(1) and 6653(a)(2) inapplicable to McNamara with respect to his underpayment of tax for 1984, in docket No. 30235-88.

### Addition to Tax: Section 6659

The next issue for decision is whether petitioners in docket Nos. 26336-88, 27525-88, 27526-88, 27527-88, and 30235-88 are subject to the addition to tax under section 6659. That section imposes an addition to tax in the case of

an underpayment attributable to a valuation overstatement. A valuation overstatement occurs if the value of a property's basis claimed on a return is 150 percent or more of the amount determined to be the correct amount of such valuation. Sec. 6659(c).

The amount of the addition to tax under section 6659 is a percentage of the underpayment attributable to the valuation overstatement. Sec. 6659(a). If the valuation claimed is more than 200 percent but not more than 250 percent of the correct valuation, the addition to tax equals 20 percent of the underpayment attributable to the overvaluation. Sec. 6659(b). However, section 6659 is inapplicable if the underpayment attributable to a valuation overstatement is less than $1,000. Sec. 6659(d).

The addition to tax under section 6659 applies to underpayments by individual partners, even though the overvaluation is made at the partnership level on the partnership return. See *Helba v. Commissioner*, 87 T.C. 983, 1014 (1986), affd. without published opinion 860 F.2d 1075 (3d Cir. 1988).

In the cases at bar, Fabyan claimed the improvements had a value of $227,000. We determined the improvements' total value was $93,400. The claimed value for the improvements, $227,000, is 243 percent of the amount determined to be the correct value for the improvements. Accordingly, the amount of the addition to tax under section 6659 is 20 percent of the underpayments in docket Nos. 26336-88, 27525-88, 27526-88, 27527-88, and 30235-88 which are attributable to Fabyan's overvaluation of the improvements, and which are in the amount of $1,000 or more.

## Addition to Tax: Section 6661(a)

We must next decide whether respondent was correct in determining the section 6661(a) addition to tax for a substantial understatement of tax applied in docket No. 26336-88. Under section 6661(b)(2), an understatement occurs where the amount shown as tax on a return is less than the amount required to be shown. An understatement of tax is substantial if it exceeds 10 percent of the tax required to be shown on the return for the taxable year or $5,000, whichever is greater. Sec. 6661(b)(1).

The amount of the addition to tax imposed by section 6661(a) equals 25 percent of any underpayment attributable to the substantial understatement. For purposes of determining the amount of the addition to tax under section 6661(a), the amount of the understatement in question is reduced by that portion of the substantial understatement with respect to which the addition to tax under section 6659 was imposed. Sec. 6661(b)(3). Further, if an item is not attributable to a tax shelter[7] the amount of understatement subject to the addition to tax is reduced by such item if the taxpayer's treatment of the item was based on substantial authority, or the relevant facts affecting the item's tax treatment are adequately disclosed in the return. Sec. 6661(b)(2)(B).

Respondent determined petitioners in docket No. 26336-88 were subject to the addition to tax under section 6661(a). Petitioners in that case bear the burden of proving respondent's determination incorrect. *Marcello v. Commissioner*, 43 T.C. 168 (1964), affd. in part 380 F.2d 499, 505-507 (5th Cir. 1967).

Weis' only argument with respect to this issue is that substantial authority exists for deducting the interest imputed under section 483 ratably over the life of the contract. We agree substantial authority existed supporting Weis' position with respect to the interest issue.[8] Accordingly, we hold the amount of the understatement in docket No. 26336-88 shall be reduced, for purposes of applying section 6661, by that amount attributable to the interest issue item.

### *Increased Interest: Section 6621(c)*

Finally, we must decide whether petitioners in docket Nos. 27525-88, 27527-88, and 30235-88 are subject to increased interest under section 6621(c) for engaging in a tax-motivated transaction. Under that section, if a substantial underpayment of tax is due to a tax-motivated transaction, the applicable rate of interest on the deficiency is 120

---

[7]See sec. 6661(b)(2)(C)(i). In docket No. 26336-88, petitioners' investment in Fabyan does not constitute a "tax shelter" as defined for purposes of sec. 6661. See sec. 6661(b)(2)(C)(ii).

[8]*See the authorities relied on by respondent in Williams v. Commissioner,* 94 T.C. 464 (1990), wherein respondent maintained the same position taken by Weis in the case at bar.

percent of the underpayment rate of interest otherwise applicable under section 6621(a). A substantial underpayment attributable to a tax-motivated transaction exists if an underpayment of tax is: (1) Attributable to a valuation overstatement within the meaning of section 6659(c), section 6621(c)(3)(A)(i), and (2) in excess of $1,000, section 6621(c)(2).

In docket Nos. 27525-88, 27527-88, and 30235-88, we determined a valuation overstatement existed for purposes of the addition to tax under section 6659. Accordingly, a portion of the underpayments in those docket numbers is attributable to a tax-motivated transaction. For those cases in which the portion of the underpayments so attributable is in excess of $1,000, section 6621(c) applies.

To reflect the foregoing,

*Decisions will be entered under Rule 155.*