STUART A. AND CAROL A. REILE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Reile
Docket No. 20936-90
United States Tax Court
T.C. Memo 1992-488; 1992 Tax Ct. Memo LEXIS 512; 64 T.C.M. (CCH) 603; August 27, 1992, Filed *512 Decision will be entered for petitioners. For Petitioners: Marvin W. Temple and Nick Hay. For Respondent: Andrew M. Winkler. JACOBS
JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: Respondent determined the following additions to petitioners' Federal income tax: Additions to Tax
Sec.
Sec.
Sec.
Sec.
Year
6653(a)(1) [1]
6653(a)(2)
6659
6661
1980
$   266
-0-
$  1,596
-0- 1981
190
[2] 1,142
-0- 1983
3,018
[3] 17,427
$   566
1984
1,113
[4] 3,777
2,418
All section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. Respondent conceded the additions to tax determined under section 6659. The issues remaining for decision are: (1) Whether petitioners are liable for additions to *513 tax for negligence or intentional disregard of rules and regulations; and (2) whether petitioners are liable for additions to tax for substantial understatement of income tax. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulation of facts and accompanying exhibits are incorporated by this reference. Petitioners resided in Maple Grove, Minnesota, when they filed their petition. Investment in The Partnership
Mrs. Reile is a high school graduate. Mr. Reile studied liberal arts and education for 1 year at Western Washington College of Education in Bellingham, Washington. After Mr. Reile completed his 1 year of college, he joined the United States Air Force and was trained in radio and radar electronics and digital data computers. He was in the Air Force for 4 years and 9 months. When he was discharged, he remained in the electronics field, working first as a technician and then in sales and marketing. In 1982, Mr. Reile began working for Ciprico, Inc. (Ciprico) as a sales executive. He was granted options to purchase shares of Ciprico stock. In July 1983, Ciprico (previously a private company) went public. As a result, the Ciprico stock options *514 held by Mr. Reile became quite valuable. Since petitioners had no experience with finance or investing, they hired Reed Palmer (Palmer), a financial planner whom Mr. Reile knew from their work on a youth program for Mr. Reile's church, to advise them. Palmer graduated from the University of Minnesota with a degree in accounting or business, and owned a financial and accounting firm. Petitioners completed a questionnaire for Palmer in which they indicated their plans for their future financial security, the type of investments they wanted to make, and other matters. Petitioners indicated that their intermediate and long-term goals were to "Start another business, possibly move to Plymouth or Rockford, keep Carol's business going (get it out of the house), improve food storage, mission, college, financial independence, and travel." In response to the question "Do you feel there exist any obstacles which will prevent your accomplishment of these goals?", petitioners responded "Lack of understanding of financial matters, uncertain economy." In the questionnaire, petitioners were asked to rank their familiarity with 37 types of investments on a scale of one to five. A score of one *515 indicated no familiarity with the investment while a score of five indicated a high degree of familiarity. Of the 37 investments, petitioners ranked their familiarity with 19 investments with a score of one, 5 investments with a score of two, and 12 investments with a score of three. Petitioners did not rank any investments with a score of four or five. At the bottom of the page, either Mr. Reile or Mrs. Reile wrote "We is dummies!" to highlight their lack of knowledge concerning investments. After Ciprico became a public company, Mr. Reile exercised his options to purchase 32,000 shares of Ciprico stock. In 1983, he sold 16,000 of those shares for approximately $ 180,000. Ciprico reported $ 407,947.72 as wages on Mr. Reile's W-2 Form for 1983. In 1984, Mr. Reile sold his remaining 16,000 shares. The record does not contain the amount realized on the sale. Ciprico reported $ 268,385.24 as wages on Mr. Reile's W-2 Form for 1984. In 1983, Palmer advised petitioners to make an investment in a limited partnership called the Barrister Equipment Associates Series One Hundred Thirty-One, L.P. (The Partnership). The Partnership was formed to print, distribute, and sell books. *516 In addition, The Partnership was formed to lease the lithograph films and metallic plates required to produce hardcover and softcover editions of books. Petitioners invested $ 37,500 in The Partnership in 1983 and $ 37,500 in The Partnership in 1984. Petitioners received a Schedule K-1 from The Partnership showing that they had an ordinary loss of $ 22,630 and property eligible for an investment tax credit of $ 778,888 for 1983. For 1984, petitioners received a Schedule K-1 from The Partnership showing that they had an ordinary loss of $ 45,773 and property eligible for the investment tax credit of $ 157,376. Petitioners and other investors in The Partnership sued The Partnership and its principals for fraud. At the time of trial, the suit against The Partnership and its principals was still pending. Reliance on Palmer
Palmer and Mr. Reile were members of The Church of Jesus Christ of Latter Day Saints. Both were temple recommend holders. (Only temple recommend holders can attend the temple, the place where temple recommend holders go for spiritual instruction, worship, and further training about the church and its role in members' lives.) For a church member to attain *517 the position of temple recommend holder, the bishop of the local congregation must examine the church member regarding his honesty, as well as the church member's compliance with other religious and secular requirements. In addition, the stake president, the spiritual leader of a stake or group of congregations, must conduct a similar examination. For a church member to retain his status as a temple recommend holder, the bishop and the stake president must examine him annually. Based on Palmer's status as a temple recommend holder and his personal acquaintance with Palmer, Mr. Reile believed that Palmer would be honest in his business dealings. Palmer stated that he had investigated The Partnership, that it had a high quality, and that it would best satisfy petitioners' investment goals. Palmer told petitioners that he had spoken with representatives from The Partnership and that he was satisfied with the investment. Palmer told petitioners that they could reasonably expect to receive their moneys back at appropriate times so that they could pay for their children's college expenses, attend missions, and accomplish their other goals. Mr. Reile glanced at the descriptive brochure *518 outlining The Partnership prior to making the investment. Nonetheless, he relied primarily upon Palmer's expertise. Mr. Reile did not understand the tax example in the brochure at the time it was given to him and still did not understand it at the time of the trial. Furthermore, Mr. Reile did not understand the private placement memorandum which was sent to him after the investment was made. Petitioners relied on Palmer to prepare their 1983 and 1984 income tax returns. Palmer also prepared petitioners' applications for tax refunds for 1980, 1981, and 1982. The refunds resulted from the carryback of the investment tax credit taken with respect to property of The Partnership. Other Investments Made With Palmer
In addition to their investment in The Partnership, petitioners purchased a term life insurance policy from Palmer, invested $ 50,000 in an apartment building which Palmer promoted, and purchased individual retirement accounts through Palmer. Petitioners also invested $ 30,000 with Palmer, which he used in a Ponzi scheme. Palmer was convicted of fraud with respect to the Ponzi scheme. At the time of the instant trial, petitioners could not locate him to testify. *519 Palmer never returned the $ 30,000 invested by petitioners. Respondent issued notices of deficiency to petitioners for 1980, 1981, 1983, and 1984 which disallowed a portion of petitioners' losses in The Partnership. Petitioners and respondent signed a settlement agreement whereby petitioners agreed to pay approximately $ 85,000 in additional taxes, plus interest. Thereafter, respondent issued notices of deficiency to petitioners determining the additions to tax at issue herein. OPINION Additions to Tax For Negligence
Section 6653(a)(1) [1] provides that if any part of an underpayment is due to negligence or intentional disregard of rules and regulations, then the taxpayer is liable for an addition to tax equal to 5 percent of the underpayment. Crocker v. Commissioner, 92 T.C. 899, 916 (1989). Section 6653(a)(2) imposes an addition to tax equal to 50 percent of the interest payable under section 6601 on that portion of the underpayment attributable to negligence or intentional disregard of rules and regulations.
*520 If a taxpayer relies in good faith upon the advice of a competent and experienced accountant in the preparation of the taxpayer's return, the addition to tax for negligence or intentional disregard of rules and regulations is not applicable. Weis v. Commissioner, 94 T.C. 473, 487 (1990). Petitioners had no investment experience. Palmer was an accountant and owned a financial and accounting firm. Palmer reviewed the descriptive brochure of The Partnership, spoke with representatives of The Partnership, and concluded that the investment was satisfactory. Under these circumstances, petitioners could not be expected to outguess Palmer regarding the validity of the deductions taken with respect to their investment in The Partnership. Petitioners reasonably and in good faith relied on Palmer's advice, and thus petitioners are not liable for the additions to tax under section 6653(a)(1) and (2). Additions to Tax For Substantial Understatement of Tax
Section 6661 provides that a taxpayer is liable for an addition to tax equal to 25 percent of the amount of any underpayment attributable to a substantial understatement of income tax. There is a substantial *521 understatement of tax for a taxable year if the amount of the understatement for the taxable year exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). Understatement is defined as the excess of the amount of the tax required to be shown on the return for the taxable year over the amount of the tax imposed which is shown on the return. Sec. 6661(b)(2)(A). Petitioners argue that respondent should have waived the addition to tax pursuant to section 6661(c). Section 6661(c) authorizes respondent to waive any part of the addition to tax imposed under section 6661(a) upon a showing by the taxpayer of reasonable cause for the understatement and that the taxpayer acted in good faith. The most important factor in determining whether to grant a waiver is "the extent of the taxpayer's effort to assess the taxpayer's proper tax liability under the law." Sec. 1.6661-6(b), Income Tax Regs.; see Mailman v. Commissioner, 91 T.C. 1079, 1083-1084 (1988). Reliance upon the advice of a professional will not constitute a showing of reasonable cause and good faith unless, under all the circumstances, such reliance was *522 reasonable in light of the taxpayer's experience, knowledge, and education. Sec. 1.6661-6(b), Income Tax Regs.
Although the record is silent regarding whether petitioners requested a waiver and submitted materials to respondent regarding same, we assume that such a request was made and that the evidence in this record was available to respondent. See Rogers v. Commissioner, T.C. Memo. 1990-619. The appropriate standard of review for the denial of a waiver is whether respondent's refusal to waive the section 6661 addition to tax constitutes an abuse of discretion. Mailman v. Commissioner, supra at 1083-1084. We found Mr. Reile to be a credible witness. After observation of him while testifying, we find that petitioners acted in good faith. Further, considering petitioners' lack of investment experience and limited knowledge of financial matters, we find petitioners' reliance upon Palmer to be reasonable. Since in this case we have found both reasonable cause and good faith, we hold that petitioners have carried their burden of showing that respondent's refusal to waive the section 6661 addition to tax constitutes an abuse of discretion. *523 Accordingly, petitioners are not liable for the additions to tax under section 6661. Decision will be entered for petitioners. Footnotes
1. For 1980, sec. 6653(a). ↩
2. Plus 50 percent of the interest payable on $ 3,805. ↩
3. Plus 50 percent of the interest payable on $ 60,353. ↩
4. Plus 50 percent of the interest payable on $ 22,263.↩
1. For returns on which the last date prescribed for payment is on or before Dec. 31, 1981, the addition to tax for negligence or intentional disregard of rules and regulations was set forth in sec. 6653(a). Economic Recovery Tax Act of 1981, Pub. L. 97-34, sec. 722(b)(1), 95 Stat. 172, 342-343.↩