T.C. Memo. 2001-159


UNITED STATES TAX COURT


GEORGE VAJDA, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

THOROUGHBRED BREEDERS PARTNERSHIP, GEORGE VAJDA,
TAX MATTERS PARTNER, Petitioner v. COMMISSIONER OF
INTERNAL REVENUE, Respondent


Docket Nos. 5065-00, 5066-00.          Filed June 29, 2001.


Kenneth R. Cohen, for petitioner.

William T. Lyons, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, Judge:  The docketed cases are before the Court consolidated for trial, briefing, and opinion.  Respondent determined deficiencies of $4,540, $1,849, and $1,204 in George Vajda's (petitioner's) 1994, 1995, and 1996 Federal income taxes,

respectively.  Respondent also determined that petitioner was liable for section 6662(a) accuracy-related penalties of $908, $370, and $241 for the respective years and a $120 addition to his 1996 tax under section 6651(a)(1).[1]  Respondent's determinations stem in part from adjustments that respondent made to depreciation deductions claimed by Thoroughbred Breeders Partnership (TBP), a partnership in which petitioner is a partner.  For 1994, TBP was subject to the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, sec. 402(a), 96 Stat. 648.  Petitioner also petitioned the Court for that year in his capacity as TBP's tax matters partner.

We decide first whether TBP may deduct the disputed depreciation.  We hold it may not.  We decide second whether petitioner had sufficient basis to deduct losses which passed through to him from his wholly owned S corporation, Calvary Equities, Inc. (Calvary).  We hold he did.[2]

---

[1] Section references are to the Internal Revenue Code in effect for the subject years.  Rule references are to the Tax Court Rules of Practice and Procedure.  Dollar amounts are rounded.

[2] The pleadings in this case raise three additional issues: (1) Whether petitioner is liable for the addition to tax under sec. 6651(a), (2) whether petitioner is liable for the accuracy-related penalties under sec. 6662(a), and (3) whether respondent is barred by the period of limitation under sec. 6501 from assessing tax for the subject years.  As to the first of these issues, we hold for petitioner on the basis of our finding that he filed his 1994 return timely.  As to the other two issues, we

(continued...)

FINDINGS OF FACT

Many facts were stipulated.  The parties' stipulation of facts and the exhibits submitted therewith are incorporated herein by this reference.  The stipulated facts are found accordingly.  When petitioner's petition was filed, his mailing address was in Hackensack, New Jersey.  TBP's mailing address was also in Hackensack, New Jersey, when a petition was filed on its behalf.

In 1975, Alpha Farms, Inc. (Alpha), an entity whose principal shareholder is petitioner, purchased 93.97 acres of unimproved land (land) in Upper Freehold, New Jersey, for $197,337.  The only structure on the land was a hay barn that was built around 1900.  From 1978 to 1980, Alpha erected various buildings (buildings) on the land to transform the land into a horse breeding farm (collectively, the buildings and land are referred to as the farm).  These buildings included:  (1) A two bedroom, two bath house, (2) a grooms' quarters and office consisting of eight rooms and a double and single bath, (3) a concrete barn with 16 stalls, (4) a steel barn with 22 stalls and an x-ray room, (5) a training arena with 10 stalls and an indoor exercise area with an artificial surface, (6) an equipment shed,

---

²(...continued)
hold for respondent.  The record contains no evidence that would support a holding for petitioner as to those issues.  See Rule 142(a).

and (7) a concrete manure pit.  Alpha conveyed the farm to TBP in 1986, reflecting on the certified deed that the conveyance was made in return for Alpha's receipt of money in the amount of $350,000.  TBP made no capital improvements to the farm afterwards.

For 1994 through 1996, petitioner filed timely individual income tax returns, and TBP filed timely partnership returns of income.  Each partnership return claimed a $48,763 depreciation deduction for the buildings.  TBP's 1994 return reported that the buildings had been "placed in service" in 1986 and had a depreciable basis of $926,500.[3]  TBP calculated this depreciation using the straight line recovery method and a 19-year recovery period.  As of December 31, 1993, TBP had claimed $390,104 of depreciation on the buildings.

Respondent determined that TBP was not entitled to deduct any of the depreciation claimed for the subject years.  As stated in the notice of deficiency issued to petitioner (and as stated similarly in the FPAA issued to TBP for 1994):

> Thoroughbred Breeders Partnership is claiming a total basis in the 93 acre thoroughbred horse farm as follows:
>
> | | |
> |---|---|
> | Land | $300,000 |
> | Buildings | 926,500 |

---

[3] TBP's 1995 and 1996 returns claimed on their face the same $48,763 deduction for depreciation, but provided no specifics as to that deduction.

```
Fencing                          81,365
Track System                    130,000
Furniture & Equipment            62,135
Total                         1,500,000
```

\*     \*     \*     \*     \*     \*     \*

It is determined that the depreciation expense deductions of $48,763.00 claimed on the 1995 and 1996 partnership returns are not allowed because the partnership claimed depreciation expenses deductions in excess of its basis due to overvaluation of the property. The deed for purchase of the entire farm from Alpha Farm, Inc. on November 3, 1986 shows a purchase price of $350,000.00 instead of $1,500,000.00 as claimed. It has not been established the partnership completely paid $1,500,000.00 for the property or continued to be liable for any debt to pay such amount. Consequently, the original cost of the asset of $350,000.00 is allowed as a basis for depreciation. Since accumulated depreciation of $390,104.00 previously claimed for years 1986 through 1993 exceeds the original cost, the asset is considered fully depreciated and no additional depreciation expenses deduction is allowable.

For 1994, 1995, and 1996, petitioner claimed on his personal returns respective losses of $35,654, $29,376, and $62,709 as passthrough items from Calvary. Respondent determined that petitioner had insufficient basis in Calvary to deduct any of these losses. On or about July 15, 1993, petitioner borrowed $250,000 from Fleet Bank and transferred this money to Calvary either as a loan from him to Calvary or as a contribution to its equity. On June 17, 1996, Fleet filed a lawsuit against petitioner for the $250,000, plus interest, late fees, collection costs, and attorney's fees, alleging that petitioner failed to

make timely payments on the loan.  Fleet filed the lawsuit against no other person or entity.

OPINION

1. Depreciation

Respondent determined that TBP's depreciable basis in the buildings was $350,000 and that the buildings were fully depreciated as of the beginning of the subject years.  Petitioner argues that TBP's depreciable basis in the buildings was $926,500 and that they were not fully depreciated during any of the subject years.  We agree with respondent.

The depreciable basis of property is generally its cost, see secs. 167(g), 1011, and 1012; Weis v. Commissioner, 94 T.C. 473, 482 (1990), and a taxpayer such as petitioner bears the burden of proving the depreciable basis in property, see Rule 142(a).[4] Section 6001 mandates that taxpayers keep permanent records sufficient to establish their claims to all deductions.

Petitioner produced no records at trial establishing TBP's depreciable basis in the buildings.  He attempted to prove that basis primarily through his testimony.  Petitioner testified vaguely that the buildings cost Alpha "in excess of a million

---

[4] Contrary to petitioner's assertion on brief, we do not find respondent's determination arbitrary or without foundation. We disagree with petitioner's assertion on brief that "the replacement cost figures introduced by respondent [at trial] were so unrealistic that they amounted to an arbitrary and capricious valuation".

dollars" and that Alpha encountered "unusual circumstances" in constructing the buildings resulting in this cost. These circumstances, petitioner testified, were due mainly to the need to construct the buildings in accordance with expert specifications, the unavailability of "competent tradespeople" in the locale of the farm, and Alpha's incurring of tremendous legal expenses. Petitioner provided no specifics as to the "in excess of a million dollars" cost. Nor did he provide any specific dollar amount as to any of the costs attributable to the "unusual circumstances".

Petitioner also relies on the testimony of his expert, Jess A. Salmon. Mr. Salmon testified that the estimated cost of the buildings was $413,500, without regard to most of the "unusual circumstances" described by petitioner, and attributed the estimated cost to the following items, each of which he assumed was built between 1978 and 1980:

| Items | Cost |
|---|---|
| House | $81,200 |
| Quarters and office | 74,800 |
| Concrete barn | 85,700 |
| Steel barn | 83,500 |
| Training area | 72,800 |
| Hay barn | 7,237 |
| Equipment shed | 7,163 |
| Manure pit | 1,100 |
| Total | 413,500 |

Petitioner concludes from Mr. Salmon's testimony that the $413,500 estimate is consistent with the claimed basis of $926,500 when viewed in the light of the "unusual circumstances".

We disagree with petitioner for two reasons. First, petitioner focuses inappropriately on the construction costs to ascertain TBP's basis in the buildings. Given the fact that all of these costs were incurred between 1978 and 1980 and that TBP did not purchase the farm from Alpha until 1986, none of these costs enter into TBP's depreciable basis in the buildings. TBP's basis in the farm, which by our definition includes both the buildings and the land, equals the amount that it paid Alpha for the sale. That amount is stated clearly in the deed as $350,000.

Petitioner makes little attempt to explain the $350,000 price set forth in the deed other than to assert on brief that the Court need not accept that figure as TBP's depreciable basis. In his petition, petitioner did allege that TBP received the farm from Alpha in exchange for Alpha's receipt of an interest in TBP and, accordingly, that section 723 operated to give TBP a transferred basis in the farm. Respondent, however, denied that allegation in answer. The allegation, therefore, is not evidence. See Rule 143(b). Petitioner's counsel also informed the Court during his opening statement at trial that petitioner would show that he had caused Alpha to contribute the farm to TBP in exchange for a partnership interest. Petitioner never made

any such showing. In fact, petitioner neither elicited any testimony in support of his counsel's statement, nor attempted to introduce any other type of supporting evidence.

Second, even if the construction costs had any bearing on TBP's depreciable basis, we disagree with petitioner that these costs aggregated $926,500. We do not rely on petitioner's testimony on this subject for it is vague, uncorroborated, and self-serving. See Diamond Bros. Co. v. Commissioner, 322 F.2d 725, 730-731 (3d Cir. 1963), affg. T.C. Memo. 1962-132; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). The only other evidence on this subject, namely, the testimony of Mr. Salmon, does not support petitioner's claim to the $926,500 basis. Mr. Salmon testified that the estimated cost of the buildings was $413,500, a figure that was inflated by $7,237 in that it incorrectly included the cost of the hay barn. The cost of the hay barn should not have been included in his calculation because the hay barn was constructed before even Alpha acquired the land. We also note an inconsistency between the cost factors used by Mr. Salmon to perform his calculations and the factors used by respondent's expert, Harriett Watts, to arrive at her conclusion that the estimated cost of the buildings was $286,258. Although both experts used the same valuation guide to perform their calculations, only Ms. Watts applied the cost factors for Newark, New Jersey, a city which is proximate to the situs of the farm.

Mr. Salmon, on the other hand, applied the cost factors for the eastern region of the United States, which were greater than the Newark cost factors. Mr. Salmon's application of the greater cost factors obviously resulted in his greater cost estimate. We believe that Mr. Salmon's application of the greater cost factors was wrong.

We conclude that petitioner has failed to disprove respondent's determination that the depreciable basis of the buildings at the start of the subject years was less than the $390,014 of depreciation taken as of that date. We sustain respondent's determination on this issue.

2. $250,000 Loan

We must determine whether petitioner has sufficient tax basis in his Calvary stock to allow him to deduct the passthrough losses. A shareholder of an S corporation may utilize the losses from an S corporation only to a limited extent. The losses may not exceed the sum of the adjusted basis of the shareholder's stock in the S corporation plus his or her adjusted basis of any indebtedness of the S corporation to the shareholder. See sec. 1366(d)(1).

Petitioner again relies on his testimony to support his assertion that the $250,000 loan from Fleet enters into this computation. In contrast with petitioner's testimony on the first issue, we find petitioner's testimony on this issue is

adequately supported by other reliable evidence in the record. The record as a whole establishes to our satisfaction that Fleet lent the $250,000 to petitioner personally, that petitioner transferred those proceeds to Calvary, that petitioner recorded on Calvary's books that it (and not he) had received those proceeds directly from Fleet in the form of a loan, and that petitioner erroneously recorded the loan as between Fleet and Calvary.  We hold for petitioner on this issue.

We have considered each of the parties' arguments and have rejected those arguments not discussed herein as irrelevant or without merit.  Accordingly,

Decisions will be entered

under Rule 155.