T.C. Memo. 2004-31

UNITED STATES TAX COURT

PAUL R. PEETE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16002-02.               Filed February 6, 2004.

Paul R. Peete, pro se.

<u>Jean Song</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, <u>Judge</u>:  Respondent determined a deficiency in petitioner's 2000 Federal income tax of $20,015 and an accuracy-related penalty under section 6662(a)[1] of $3,659.80.  After

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

concessions,[2] the sole issue for decision is whether petitioner is liable for the penalty. We hold that he is liable.

FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts, the stipulation of settled issues, and the attached exhibits are incorporated herein by this reference. Petitioner resided in Gardena, California, at the time his petition was filed.

On Schedule C, Profit or Loss From Business, of his 2000 Form 1040, U.S. Individual Income Tax Return, petitioner claimed a business loss of $60,044 for a principal business or profession listed as "Marketing Sales". The loss comprised the following claimed expenses: (1) $2,007 for advertising; (2) $7,471 for car and truck expenses; (3) $24,944 for depreciation and section 179 expense deduction; (4) $1,960 for mortgage expenses; (5) $1,268 for travel; (6) $1,295 for meals and entertainment; and (7) $21,099 for other expenses. The other claimed expenses included: (1) $4,955 for donations at Bible college; (2) $8,707 for repairs service; (3) $699 for tax preparation fees; (4) $980 for

_____

[2]In a stipulation of settled issues, petitioner conceded that he is liable for interest income of $68 and a taxable distribution of $1,917, and that he is not entitled to Schedule C, Profit or Loss From Business, expenses of $60,044. On brief, respondent concedes that petitioner is not subject to the 10-percent additional tax of $1,156 for early distribution under sec. 72(t). The remaining adjustments contained in the notice of deficiency are computational in nature and will be resolved by the parties in the Rule 155 computation.

financial planning; (5) $986 for cell phone; (6) $169 for parking; (7) $829 for professional business expenses; (8) $1,002 for prospecting green fees; and (9) $2,772 for teaching expenses. Petitioner reported tax liability of $10,071 on his 2000 return.

Petitioner's occupation is listed on the return as "SERV TECH", and the majority of his reported wage, salaries, tips, etc., income for the year was from Lucent Technologies. Elray Wise of E.W. Holding Co., is listed as the paid preparer of the tax return.[3]

Respondent issued to petitioner a notice of deficiency dated July 15, 2002, for the taxable year 2000. Respondent determined that petitioner's corrected tax liability was $28,930 and that he was liable for additional tax of $1,156 under section 72(t). One of respondent's determinations was that petitioner was not entitled to the claimed Schedule C expenses. Respondent calculated that the underpayment of tax attributable to the disallowed Schedule C expenses was $18,299. Finally, respondent determined that petitioner was liable for an accuracy-related penalty under section 6662(a) of 20 percent of the underpayment attributable to the disallowed Schedule C expenses. Petitioner timely filed a petition to this Court seeking a redetermination.

---

[3]The evidence in the record indicates that Robin Manasseh, who worked for E.W. Holding Co., actually prepared petitioner's 2000 tax return.

The trial in this case was held on September 9, 2003. At the conclusion of the trial, the Court ordered respondent to file a brief and then allowed petitioner until January 15, 2004, to file an answering brief. Respondent timely filed a brief; however, petitioner failed to file an answering brief.

OPINION

The issue for decision is whether petitioner is liable for the accuracy-related penalty on the underpayment of tax attributable to the disallowed Schedule C loss. Petitioner's position is that he is not liable for the penalty because he relied on the advice of his tax return preparer.

Section 6662(a) imposes a penalty of 20 percent of the portion of the underpayment of tax attributable to the taxpayer's negligence, disregard of rules or regulations, or substantial understatement of income tax. Sec. 6662(a), (b)(1) and (2). An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year, or $5,000. Sec. 6662(d)(1) and (2).

The accuracy-related penalty does not apply to any part of an underpayment of tax if it is shown that there was reasonable cause for and that the taxpayer acted in good faith with respect to that part. Sec. 6664(c)(1). The determination of whether a taxpayer acted in good faith is made on a case-by-case basis,

taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.

Under section 7491(c), the Commissioner must come forward with sufficient evidence to show that a penalty is appropriate.[4] Higbee v. Commissioner, 116 T.C. 438, 446 (2001). However, the Commissioner does not bear the burden of proof as to a penalty, and once the initial burden of production is met, the taxpayer must come forward with sufficient evidence to establish that the addition to tax does not apply. Id. at 447.

Petitioner reported a tax liability of $10,071 on his 2000 tax return. Respondent determined that petitioner's corrected tax liability, including additional tax under section 72(t), was $30,086. Respondent calculated that $18,299 of the corrected tax liability was attributable to the Schedule C loss which petitioner has conceded he is not entitled to deduct. Thus, respondent has satisfied the burden of showing that the accuracy-related penalty is appropriate because the understatement of tax exceeds the greater of 10 percent of the tax required to be shown on the return, or $5,000.[5] In order to avoid imposition of the

---

[4]Sec. 7491 is effective with respect to court proceedings arising in connection with examinations commencing after July 22, 1998. Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 727. The evidence in the record indicates that the examination in this case commenced after July 22, 1998.

[5]The computational adjustments to petitioner's 2000 return (continued...)

penalty, petitioner must establish that he had reasonable cause and acted in good faith with respect to the claimed Schedule C loss.

The general rule is that taxpayers have a duty to file complete and accurate tax returns and cannot avoid the duty by placing responsibility with an agent.  United States v. Boyle, 469 U.S. 241, 252 (1985); Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987).  However, in limited situations, the good faith reliance on the advice of an independent, competent professional in the preparation of the tax return can satisfy the reasonable cause and good faith exception.  United States v. Boyle, supra at 250-251; Weis v. Commissioner, 94 T.C. 473, 487 (1990).  The reliance must be reasonable, in good faith, and based on full disclosure.  United States v. Boyle, supra at 250-251; Weis v. Commissioner, supra.

Petitioner testified that the activity reported on Schedule C was related to a pyramid scheme run by "The Tax People". Petitioner testified that he was recruited by participants in the scheme and attended a seminar describing the activity. Petitioner initially invested $300 and then paid $25 per month to participate in the activity.  The only way for petitioner to accumulate money was if he recruited other people to join the

---

[5](...continued)
are relatively minor in amount and do not impact the finding that there was a substantial understatement of income tax.

activity.  Petitioner's business activities consisted of meeting with people and trying to recruit them into the activity. Petitioner testified that his tax return preparer, Robin Manasseh (Ms. Manasseh), introduced him to the scheme and told him that he could deduct expenses related to recruiting other individuals. After getting involved, petitioner testified that he discovered that Ms. Manasseh was being investigated and that she informed petitioner to stop trying to recruit people until the investigation was finished.

Petitioner had difficulty explaining how the various items constituting the Schedule C loss related to a business activity. He testified that he did not know of any advertising expenses, that he had "absolutely no idea" what the $24,944 reported as depreciation related to, that he did not know what the $8,707 in repair service expenses related to, and that he did not make any gifts to charities other than those listed on other parts of his tax return.  He testified that he claimed expenses related to playing golf and meals on the basis of the advice of Ms. Manasseh.  Petitioner acknowledged that it occurred to him that this may have been too good to be true and that he did not take steps to investigate what he was told other than trusting the judgment of Ms. Manasseh.  Petitioner also acknowledged a large part of food expenses were for meals that he had by himself and

that the hospital visits were in connection with his position as a reverend.

Petitioner was open and candid at trial regarding his involvement in the pyramid scheme. Unfortunately for petitioner, his own testimony clearly establishes that he did not have reasonable cause and did not act in good faith in claiming the Schedule C loss. Petitioner was unaware of certain items claimed as expenses on the return, he knew that some of the claimed deductions were too good to be true, and he failed to investigate the appropriateness of the claimed deductions after learning that his tax return preparer was being investigated in connection with the same activity. Petitioner failed to call Ms. Manasseh or any other witnesses at trial to corroborate his claim of good faith reliance, and his testimony indicates that he did not rely on the advice of an independent, competent tax professional. Accordingly, we hold that petitioner is liable for the accuracy-related penalty.

Decision will be entered
under Rule 155.