PETER PAUL PLANK AND CONSTANCE G. PLANK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Plank v. Commissioner
Docket No. 2935-88
United States Tax Court
T.C. Memo 1993-234; 1993 Tax Ct. Memo LEXIS 234; 65 T.C.M. (CCH) 2798; May 25, 1993, Filed *234 Decision will be entered under Rule 155. For Constance G. Plank, petitioner: Thomas G. Hodel. For respondent: Nancy M. Vinocur. JACOBS
JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: In two statutory notices, both dated November 16, 1987, respondent determined deficiencies, additions to tax, and additional interest with respect to petitioners' Federal income taxes as follows: Additions to Tax and Additional Interest
Petitioner
Year
Deficiency
Sec. 6659
Sec. 6621(c)
Peter Paul
Plank
1980
$ 3,833
$ 1,150
[1]
Peter Paul
Plank &
Constance G.
Plank
1983
7,882
2,365
[1]
Respondent, in an Amendment to Answer, asserted the following additions to tax: Year
Sec. 6653(a)
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661
1980
$ 191.65
-- --
-- 1983
-- $ 394.10
[1] $ 1,970.50
*235 After concessions by the parties, [1] the issues remaining for decision are: (1) Whether petitioner Constance G. Plank (hereinafter petitioner) qualifies for innocent spouse relief pursuant to section 6013(e) with respect to the deficiencies, additions to tax, and additional interest for 1983; and (2) if we determine that petitioner is not entitled to innocent spouse relief, whether she is subject to the addition to tax for negligence under section 6653(a)(1) and (2) for 1983. *236 All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated, and they are found accordingly. Background
Petitioners Peter Paul Plank and Constance G. Plank (hereinafter petitioners) resided in Littleton, Colorado, at the time they filed their petition in this case. Peter Paul Plank (Mr. Plank) timely filed his 1980 individual Federal income tax return. Petitioners timely filed their 1983 joint Federal income tax return. On May 30, 1984, Mr. Plank filed a Form 1045, Application for Tentative Refund, whereby he carried the unused portion of the investment tax credit claimed on petitioners' 1983 Federal income tax return back to his individual 1980 Federal income tax return. Petitioner received a B.A. in English literature from the University of California at Berkeley. She was admitted to the doctoral program in English literature at Berkeley in 1970, and completed her doctoral qualifying exams. (Petitioner did not, however, complete her doctoral dissertation.) From May 1981 through December 1983, petitioner *237 was employed as a Staff Assistant in the Division of Natural and Physical Science at the University of Colorado at Denver. In 1983, Mr. Plank was employed as an engineer with Martin Marietta Aerospace in Denver, Colorado. Petitioners were married in June 1982. They were legally separated in November 1985, and divorced in February 1986. Petitioners had each been wed once before their marriage. Petitioners maintained a joint checking account at the United Bank of Littleton, Colorado, during their marriage. Both petitioners had access to the joint account and had their own check registers. They used this account to pay household expenses. They did not maintain other accounts, either separate or joint, during the marriage. Petitioner considered the funds in the joint bank account to belong to both of them. First Energy Leasing Corporation
Petitioners first learned of First Energy Leasing Corporation (First Energy) [2] in the late fall of 1983. They attended a cocktail party where one of Mr. Plank's colleagues approached them and discussed investment opportunities with First Energy. Shortly thereafter, Mr. Plank received and reviewed written materials relating to First *238 Energy. Petitioner also perused the First Energy materials. Included among these materials was the "First Energy Leasing Corporation: 1983 Encon 1000 Equipment Leasing Program Information Memorandum" (the Information Memorandum). The majority of the Information Memorandum discusses the tax consequences or risks associated with a First Energy investment. *239 Petitioner was aware, in the fall of 1983 and prior to signing petitioners' 1983 Federal income tax return, that the First Energy investment involved an energy conservation system. She believed that the First Energy equipment was intended to save money by conserving energy. She also believed that the First Energy equipment would generate money for petitioners based upon a lease arrangement with an end-user. She considered the First Energy investment a joint investment from which both petitioners would derive benefits. Petitioner was also aware that the First Energy investment would generate tax savings for petitioners. Petitioners signed an Agreement of Lease dated December 15, 1983, whereby they agreed to lease an energy management system entitled the "ENCON 1000 System" (serial number EN101322) from First Energy. They also signed an Election To Pass Investment Tax Credit From Lessor To Lessee, dated December 15, 1983, whereby First Energy, the lessor, agreed to transfer any investment tax credit attributable to the energy management system to petitioners (the lessees). The Election To Pass Investment Tax Credit From Lessor To Lessee set forth a "property basis/cost" of the *240 energy management system of $ 100,000. Petitioners also signed a Service Agreement dated December 15, 1983, with Weatherman Energy Management Service, Inc. (Weatherman), whereby Weatherman was retained to install and operate the energy management system. On December 23, 1983, petitioners made a $ 5,000 advance guaranteed rental payment to First Energy Leasing from their joint checking account. This payment was required under the terms of the Agreement of Lease. Petitioners also paid a $ 1,500 installation fee to Weatherman on December 23, 1983, from their joint checking account. This installation fee was required under the terms of the Service Agreement. On November 11, 1984, petitioners sent a letter to a Mr. Bill Singletary. [3] Petitioners advised Mr. Singletary that they were the lessees of an energy management system, serial number EN101322, and requested that he accept and store the unit. Their letter also informed Mr. Singletary that they would negotiate disposition of the unit with him. *241 On May 21, 1985, petitioners entered into a new Service Agreement with respect to their energy management system. Pursuant to this agreement, Enerserv, a company located in Ft. Lauderdale, Florida, agreed to install and operate the system. Preparation of Petitioners' 1983 Federal Income Tax Return
Petitioners' accountant prepared their 1983 Federal income tax return in March 1984. Petitioner reviewed this return before signing it. She was aware that investment tax credits from First Energy Leasing were claimed on the return. She also knew that the investment tax credit was a mechanism for saving taxes at that time. Petitioners reported wage income of $ 52,390 and $ 21,786, for Mr. Plank and petitioner, respectively, on their 1983 joint Federal income tax return. They attached a Schedule W, Deduction for a Married Couple When Both Work, to this return. They also claimed a total deduction of $ 6,500 from their investment in First Energy on Schedule C of their 1983 return. [4] On Form 3468, Computation of Investment Credit, they claimed an investment tax credit of $ 10,000 for the First Energy energy management system. Petitioners claimed $ 6,167 of this amount on their *242 1983 return and Mr. Plank carried back the remaining $ 3,833 to his 1980 individual Federal income tax return. Respondent disallowed these deductions and investment tax credits. OPINION Issue 1. Claimed Innocent Spouse Relief
The first issue is whether petitioner qualifies for innocent spouse relief pursuant to section 6013(e) with respect to the deficiencies, additions to tax, and interest for 1983. Petitioner claims that she is entitled to this relief. Respondent disagrees. Section 6013(d)(3) provides that, in the case of a joint return, the liability of a husband and wife shall be joint and several. However, under section 6013(e) [5] an "innocent spouse" is relieved of liability if he or she proves: (1) That a joint return has been made for a taxable year; (2) that on such return there was a substantial understatement *243 of tax; (3) that the understatement exceeds a certain percentage of the preadjustment year income of the spouse seeking relief; (4) that the substantial understatement of tax is attributable to grossly erroneous items of the other spouse; (5) that the spouse seeking relief did not know, and had no reason to know, of such substantial understatement when he or she signed the return; and (6) that, after consideration of all the facts and circumstances, it would be inequitable to hold him or her liable for the deficiency in income tax attributable to such substantial understatement. ; , affd. . Petitioner bears the burden of establishing that each of the requirements of section 6013(e) has been satisfied. Purcell v. Commissioner, 826 F.2d at 473. The requirements of section 6013(e) are conjunctive. Therefore, a failure to meet any of the requirements will prevent a spouse from qualifying for relief. . *244 The parties agree: That a joint Federal income tax return was filed; that the understatement of tax was substantial; that the understatement exceeds the percentage of income requirements of section 6013(e)(4); and that the claimed deductions are grossly erroneous items for which there is no basis in fact or law within the meaning of section 6013(e)(2)(B). Thus the present controversy focuses on three requirements: (1) Whether the grossly erroneous deductions relating to the First Energy investment were items attributable only to Mr. Plank; (2) whether petitioner did not know, and had no reason to know, of the substantial understatement when she signed the 1983 Federal income tax return; and (3) whether it would be inequitable to hold petitioner *245 liable for the income tax deficiency attributable to such substantial understatement. First, we conclude that First Energy was the investment of both Mr. Plank and petitioner. They initially learned of the possibility of investing in First Energy together. Both petitioners signed the closing documents for the investment, which included an Agreement of Lease, a Service Agreement, and an Agreement to Pass Investment Tax Credit from Lessor to Lessee. The $ 6,500 that petitioners used to enter into the transaction came from their joint checking account. Also, petitioner testified that had the investment been profitable, she would have expected to share in any income derived therefrom. Consequently, petitioner was jointly involved in the purchase of the First Energy investment. Petitioner makes two arguments: (1) That the Schedule C attached to petitioners' 1983 Federal income tax return lists Mr. Plank as the proprietor; and (2) that Mr. Plank carried back the unused portion of the investment credit to his 1980 individual Federal income tax return. She contends that the above facts show that First Energy Leasing was solely Mr. Plank's investment. We disagree. Petitioner's arguments *246 are self-serving. First, the mere listing of Mr. Plank as proprietor on the Schedule C does not prove that the First Energy investment was his alone. By doing so, petitioners were, in fact, able to maximize the deduction they claimed on Schedule W, Deduction for a Married Couple When Both Work, attached to their 1983 tax return. This is because the deduction is based on a percentage of the "qualified earned income" [6] of the spouse with the lowest earned income. *247 Second, in 1980, petitioner was married to her first husband. Had she carried half of the unused investment tax credit back to 1980, she might have had to share this credit with her former husband. By carrying the entire unused credit back to Mr. Plank's 1980 individual return, petitioners were able to retain the entire amount of any refund that it generated. We reject petitioner's argument that the grossly erroneous deductions relating to the First Energy investment were solely attributable to Mr. Plank. Consequently, petitioner has not satisfied the requirement of section 6013(e)(1)(B). Assuming, arguendo, that petitioner had satisfied this requirement, she still must be denied innocent spouse status for failing to prove that she did not know, and had no reason to know, of the substantial understatement of tax, as required by section 6013(e)(1)(C). Based on this record, we are persuaded that petitioner knew and had reason to know of the substantial understatement stemming from the claimed First Energy deductions when she signed petitioners' 1983 joint return. In , we held that in order to be eligible for *248 innocent spouse relief with respect to erroneous deductions, the allegedly innocent spouse must show that he or she was unaware of the circumstances that gave rise to the error on the tax return. Merely being unaware of the tax consequences of a transaction is insufficient. Further, in , affg. , the Court of Appeals approved this Court's application of such a "reason to know" standard. It stated that the "reason to know" standard is based on whether a "reasonably prudent taxpayer under the circumstances of the spouse at the time of signing the return could be expected to know that the tax liability stated was erroneous or that further investigation was warranted." . The proper inquiry is whether "the spouse had sufficient knowledge of the facts underlying the claimed deductions such that a reasonably prudent person in the taxpayer's position would question seriously whether the deductions were phony." Id.
Petitioner is a well-educated individual. She "perused" the Information Memorandum that petitioners *249 received prior to their decision to invest in First Energy. The Information Memorandum focused upon the tax consequences of the investment, while containing little substantive information about the energy conservation system. Petitioner signed all the closing documents for this transaction as co-lessee with Mr. Plank. She testified that she "perused" these documents before signing them. Further, she was aware that the First Energy program involved an investment in an energy conservation system. She knew that petitioners would not be the ultimate users of the energy conservation system, but would lease it to an end-user. Petitioner believed that she and Mr. Plank would be able to claim an investment tax credit by virtue of their investment in First Energy, and she was aware that an investment tax credit inured to their benefit by reducing their tax liability. Petitioner testified that she would have expected to share any profit that the investment earned with Mr. Plank. Petitioners' 1983 Federal income tax return clearly disclosed the First Energy investment. The $ 5,000 equipment rental fee and the $ 1,500 management fee were both claimed as expenses on petitioners' Schedule *250 C. Both of these amounts were paid out of petitioners' joint checking account. They also claimed an investment tax credit of $ 10,000. Petitioner willingly signed the 1983 return. Not only did petitioner have extensive knowledge of the underlying circumstances that gave rise to the understatement, but she also was aware of the tax-motivated purpose and tax consequences of petitioners' investment in First Energy. Furthermore, the First Energy deductions and credits claimed on petitioners' 1983 Federal income tax return were of such a magnitude compared to petitioners' income that a reasonable person of petitioner's educational level and background would have been put on notice that further inquiry should have been made. See ; . Thus, petitioner clearly knew or had reason to know of the substantial understatement on the return. She therefore has not satisfied the requirements of section 6013(e)(1)(C). See . Accordingly, we hold that petitioner is not entitled to *251 innocent spouse relief. She has failed to prove that the substantial understatement of tax is attributable to grossly erroneous items of Mr. Plank or that she did not know, and had no reason to know, of the substantial understatement when she signed the return. See . As a result, it is not necessary to decide whether it would be inequitable to hold petitioner liable for the deficiency in income tax attributable to the substantial understatement. This is because a failure to meet any of the section 6013(e) requirements prevents an individual from qualifying for innocent spouse relief. See It therefore follows that petitioner is liable for the deficiency, additions to tax, and additional interest owed with respect to the 1983 joint Federal income tax return filed by her and Mr. Plank. Issue 2. Negligence Addition to Tax
The second issue is whether petitioner is subject to the negligence addition to tax under section 6653(a)(1) and (2) for 1983. Petitioner argues that she is not liable for the negligence addition. Respondent *252 argues to the contrary. Because the negligence addition to tax was asserted in respondent's Amendment to Answer, respondent has the burden of proof on this issue. [7] See Rule 142(a). Section 6653(a)(1) imposes an addition to tax if any part of an underpayment of tax is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) imposes an additional amount, but only with respect to the portion of the underpayment attributable to the negligence. Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. . We conclude that respondent has failed to carry the burden of proving that any part of petitioner's deficiency resulted from a lack of due care *253 or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Accordingly, petitioner is not liable for the negligence addition to tax for 1983. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. As provided under sec. 6621(c), formerly sec. 6621(d).↩
1. 50 percent of the interest due on $ 7,882.↩
1. Peter Paul Plank conceded the deficiencies for 1980 and 1983, additions to tax pursuant to sec. 6659 in the amounts of $ 1,150 and $ 2,365 for 1980 and 1983, respectively, and an addition to tax pursuant to sec. 6661 in the amount of $ 1,970.50 for 1983. He also conceded that he is subject to additional interest pursuant to sec. 6621(c) for both 1980 and 1983. Respondent conceded that Mr. Plank is not subject to additions to tax for negligence pursuant to sec. 6653(a) for 1980 and sec. 6653(a)(1) and (2) for 1983. Constance G. Plank does not contest the deficiency, the addition to tax pursuant to sec. 6659, and the assertion of sec. 6621(c) additional interest for 1983. However, she claims entitlement to relief pursuant to sec. 6013(e) with regard to the deficiency, additions to tax pursuant to secs. 6653(a)(1) and (2), and 6659, and with respect to sec. 6621(c) additional interest. If she is not granted innocent spouse relief, she contests the addition to tax pursuant to sec. 6653(a)(1) and (2). Because Constance G. Plank does not contest the addition to tax pursuant to sec. 6659, respondent is not asserting the sec. 6661 addition to tax, which is not imposed concurrently on the same portion of the substantial underpayment attributable to sec. 6659. See sec. 6661(b)(3).↩
2. First Energy was an energy management equipment leasing program that marketed investment opportunities involving energy conservation systems. Petitioners' investment was structured as follows: petitioners leased an energy management system from First Energy for a period of 20 years. They paid $ 5,000 as advance first year's rental. Concurrently, they contracted with a service company, for a fee of $ 1,500, to install and operate the system on the premises of an end-user. Any energy savings attributable to the system were to be split equally, with the end-user paying the service company 50 percent of the annual energy savings as rent. The service company was to retain a fee of 15 percent of petitioners' share of the energy savings, and remit the balance to petitioners. Petitioners were then required to pay First Energy 75 percent of the remaining net income, leaving them with 10.62 percent of the total energy savings. First Energy valued the system at $ 100,000. Based upon this valuation, petitioners claimed an investment tax credit of $ 10,000 for 1983. Petitioners have conceded the applicability of the sec. 6659 addition to tax for valuation overstatements.↩
3. The record does not further identify Mr. Singletary.↩
4. The $ 6,500 included the $ 5,000 equipment rental fee and the $ 1,500 management fee. We note that Mr. Plank was listed as the "proprietor" of "Energy Management" on the Schedule C.↩
5. Although the year before us is 1983, we apply the statute as amended in 1984. This is because the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 424(a), 98 Stat. 494, 801-802, amended sec. 6013(e) retroactively to all open years to which the Internal Revenue Code applies.↩
6. Pursuant to sec. 221(b), "qualified earned income" generally means an amount equal to the excess of - (A) the earned income of the spouse for the taxable year, over (B) an amount equal to the sum of the deductions described in paragraphs (1), (2), (7), (10), and (15) of section 62 to the extent such deductions are properly allocable to or chargeable against earned income described in subparagraph (A).
Sec. 221 was repealed effective for taxable years beginning after Dec. 31, 1986,by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 131(a), 100 Stat. 2085, 2113. Listing Mr. Plank as the proprietor prevented petitioner's earned income from being reduced by the $ 6,500 Schedule C deduction associated with the First Energy system. See sec. 62(1).↩
7. We note that respondent conceded the negligence additions to tax with respect to Mr. Plank for 1980 and 1983. However, the 1983 addition with regard to petitioner remains in dispute.↩