T.C. Memo. 2007-226

UNITED STATES TAX COURT

ALEX AND TONJA ORIA, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 246-05.                    Filed August 14, 2007.

Steve M. Williard, for petitioners.

Richard T. Cummings, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, Judge:  Respondent has determined deficiencies of
$191,651 and $550,914 in petitioners' 1999 and 2000 Federal
income taxes, respectively, and accuracy-related penalties of
$38,330.20 and $110,182.80 for those years, respectively.  The
parties have filed a stipulation of settled issues (the

stipulation), which we accept. Among other things, the stipulation disposes of the deficiency in tax and accuracy-related penalty for 1999. The stipulation also provides that petitioners' taxable income, as reported on their 2000 Form 1040, U.S. Individual Income Tax Return (the Form 1040), is increased by $313,804. At the trial, petitioners conceded that a $70,000 portion of their reported bad debt deduction of $185,000 for 2000 was not allowable. Respondent agreed that petitioners would be allowed a bad debt deduction of $120,000 (which amount, intentionally, is $5,000 greater than the difference between $185,000 and $70,000). Petitioner further agreed that the underpayment in tax resulting from the disallowed portion of the deduction ($65,000) would be subject to the accuracy-related penalty. We accept that concession and those agreements. That leaves for our disposition only the question of whether the accuracy-related penalty applies to any or all of the underpayment in tax resulting from the stipulation that petitioners underreported their 2000 taxable income by $313,804.

All section references are to the Internal Revenue Code of 1986, as amended and in effect for 2000, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT[1]

Some facts are stipulated and are so found.  The stipulation of facts, with accompanying exhibits, is incorporated herein by this reference.

### Residence

At the time the petition was filed, petitioners resided in Houston, Texas.

### Medico Medical Services, Inc.

In 2000, petitioner husband (Mr. Oria) was the president and sole shareholder of Medico Medical Services, Inc. (Medico).  He signed all of Medico's checks issued in 2000 and generally

---

[1]  In part, Rule 151 provides as follows:

RULE 151. BRIEFS

\*     \*     \*     \*     \*     \*     \*

(e) Form and Content:  \* \* \*

\*     \*     \*     \*     \*     \*     \*

(3)  \* \* \*  In an answering or reply brief, the party shall set forth any objections, together with the reasons therefor, to any proposed findings of any other party, showing the numbers of the statements to which the objections are directed; in addition, the party may set forth alternative proposed findings of fact.

Petitioners have filed an answering brief, but they have failed therein to set forth objections to the proposed findings of fact made by respondent.  Accordingly, we must conclude that petitioners have conceded respondent's proposed findings of fact as correct except to the extent that respondent has failed to direct us to any evidence in the record supporting those proposed findings or those findings are clearly inconsistent with either evidence in the record or petitioners' proposed findings of fact.  See, e.g., Jonson v. Commissioner, 118 T.C. 106, 108 n.4 (2002), affd. 353 F.3d 1181 (10th Cir. 2003).

performed all duties connected with its business.  Mr. Oria is a college graduate, with a degree in business.

Robert A. Loeser

Robert A. Loeser (Mr. Loeser) is a certified public accountant with extensive experience in preparing tax returns. In December 1999, petitioners hired him to resolve an employment tax problem and to prepare tax returns for themselves and for Medico.  Mr. Loeser set up Medico's general ledger (the general ledger).  He, or a member of his staff, made entries in the general ledger for 2000.  Mr. Loeser prepared the Form 1040; he also prepared the Form W-2, Wage and Tax Statement, issued by Medico to Mr. Oria for 2000, Medico's 2000 Form 1120, U.S. Corporation Income Tax Return, and Medico's quarterly employment tax returns for 2000.

The Form 1040

The Form 1040 was erroneous, and taxable income as reported thereon is to be increased on account of the following items:

| | |
|---|---|
| Checks received from Medico not reported on Form 1040 | $248,524 |
| Personal charges on American Express Card paid by Medico | 32,580 |
| Deposits of Medico receipts, net of payments on Medico's behalf, in personal bank account | 27,550 |
| Golf club dues and charges paid by Medico | 5,150 |
| Total | 313,804 |

The $248,524 Omission

Medico made salary payments to Mr. Oria by check. Mr. Oria signed those checks for Medico. Mr. Loeser advised Mr. Oria that, whenever, on Medico's behalf, he wrote a salary check to himself, he should write a second check on Medico's behalf to cover applicable withholding and employment taxes.

Mr. Loeser or a member of his staff would record salary payments to Mr. Oria in the general ledger in one of two ways. Generally, if a corresponding tax deposit had been made, the payment would be recorded as a salary expense (i.e., debited to an account labeled "Officer Salaries"). If Medico lacked sufficient funds both to pay Mr. Oria's salary and to make the necessary tax deposit, the payment would be recorded as an amount due from Mr. Oria (i.e., debited to an account labeled "Due from Officer" (sometimes, Mr. Oria's drawing account)). The amounts debited to Mr. Oria's drawing account were not true loans, but were only classified as due from him to give cover to Medico's failure to make adequate tax deposits. The expectation was that, when sufficient funds became available, and Medico made the delinquent tax deposits, the improper classification would be corrected; i.e., the Due from Officer account would be credited, and the Officer Salaries Account would be debited, to properly reflect all of the payments to Mr. Oria as salary. No such corrections were made, however.

Bayliwix, Inc. (Bayliwix), is a corporation owned by Mr. Loeser. The following are unincorporated businesses or trade

names owned and used by Mr. Loeser (together with Bayliwix, Mr. Loeser's affiliates): Reeves Consulting, Zarzana Consulting, and Marketplace on the Net.

The general ledger records numerous transactions between Medico and Mr. Loeser or one of his affiliates during 2000. The following check and account information appears with respect to one such transaction, involving Bayliwix, Inc. A copy of the face of Medico check No. 1221, dated July 14, 2000, payable to Bayliwix, in the amount of $15,000, and signed by Mr. Oria, is attached to the pages of the ledger for the quarter ending September 30, 2000. Account No. 7011, Cost of Labor, records a payment on July 14, 2000, by Medico check No. 1221, to Bayliwix, in the amount of $90,000 ($75,000 greater than the amount shown on the face of Medico check No. 1221). Account No. 1032, Mr. Oria's drawing account, is credited (reduced) on July 14, 2000, in the amount of $75,000, on account of the payment by check No. 1221 to Bayliwix. At least one-half dozen more transactions between Medico and Mr. Loeser or one of his affiliates during 2000 share the pattern of an expense being recorded in an amount greater than the amount appearing on the associated Medico check, with the difference being credited to Mr. Oria's drawing account.

Mr. Oria did not make payments to Mr. Loeser or his affiliates during 2000 corresponding to the amounts credited to Mr. Oria's drawing account during that year. Those credits, however, reduced the yearend balance of Mr. Oria's drawing account, which reduced the amount Mr. Loeser calculated with

reference to that account as salary paid to Mr. Oria during 2000.

The Form W-2 Medico issued to Mr. Oria for 2000 reported that Mr. Oria had received wage or salary income of $543,600 in 2000. Mr. Oria reported that amount on the Form 1040. Both the Forms W-2 and 1040 understated Mr. Oria's wage or salary income from checks issued to him by Medico in the amount of $248,524.

Mr. Loeser met or spoke with Mr. Oria on numerous occasions and attempted to explain Medico's tax returns and general ledger to him, but Mr. Oria was not interested in Mr. Loeser's explanations, regarding them as "mumbo jumbo numbers", and he made little or no attempt to understand them. In response to a question from his attorney as to whether he questioned Mr. Loeser's plan that Medico would pay Mr. Loeser money and it would save Medico taxes, he answered:

> Well, no. I believed him for several reasons. My best friend told me that it was working fine for him. * * * [Mr. Loeser is] an accountant; I'm not. And, third, in all honesty, I thought it was a rite of * * * [passage]. Here I am now making seven figures, and you always hear guys that make that kind of money, you got all kinds of these loopholes that you can do. So I said: Sure, it makes sense to me; what have we got to do.

His attorney then asked him: "What did he tell you you had to do?" Mr. Oria answered:

> Well, just like I said. I mean, he would tell me I got to pay money to his entities, and we would sit down once a month, once a quarter -- I'm not sure -- and he would do this math. Okay, Alex; you've already paid yourself 100 grand this month. By paying -- your normal tax burden that would be 40 grand. By paying Bayliwix or one of those entities that he has 20-, you just -- and then I would lose him there, and, you know, it looked like I was saving money, because I was paying

less than the 40 percent or so that I was supposed to be paying.

## The $32,580 Omission

During 2000, Mr. Oria failed to report $32,580 of personal expenses charged on Medico's American Express card and paid by Medico.

## The $27,550 Omission

During 2000, Mr. Oria deposited receipts of Medico's totaling $194,888.57 into his personal bank account. Those deposits were not entered in the general ledger and were not reported on Medico's 2000 Federal income tax return. Mr. Oria paid certain expenses of Medico's from his personal bank account; the excess of deposits made over expenses paid during 2000 is $27,550. Petitioners did not provide personal bank account records to Mr. Loeser.

## The $5,150 Omission

During 2000, Mr. Oria failed to report $5,150 of golf club dues and other personal expenses paid by Medico.

### OPINION

Section 6662 imposes an accuracy-related penalty in the amount of 20 percent of the portion of any underpayment attributable to, among other things, negligence.[2] Sec. 6662(a), and (b)(1). Negligence has been defined as the failure to exercise the due care of a reasonable and ordinarily prudent person under like circumstances. Nis Family Trust v.

---

[2] Respondent concedes any basis for a sec. 6662 penalty other than negligence.

Commissioner, 115 T.C. 523, 542 (2000). Negligence includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws or to exercise ordinary and reasonable care in the preparation of a tax return. Sec. 1.6662-3(b)(1), Income Tax Regs.

The Commissioner bears the burden of production with respect to the accuracy-related penalty. Sec. 7491(c). In order to meet that burden, the Commissioner must produce sufficient evidence that it is appropriate to impose the penalty. Higbee v. Commissioner, 116 T.C. 438, 446 (2001). We may take a taxpayer's concession into account in determining whether the Commissioner has carried his burden. See, e.g., Rogers v. Commissioner, T.C. Memo. 2005-248. Petitioners have conceded that they understated their taxable income on account of: (1) erroneous credits to Mr. Oria's drawing account resulting from fictitious payments to Mr. Loeser or one of his affiliates, (2) Mr. Oria's personal expenses charged on Medico's American Express card, (3) Mr. Oria depositing Medico's receipts into his personal account, and (4) Medico's payment of Mr. Oria's golf club and other personal expenses. Petitioners' concessions are sufficient for us to conclude that respondent has carried his burden. Mr. Oria signed all of Medico's checks issued in 2000, and he generally performed all duties connected with its business. Given Mr. Oria's business degree, his experience in business, and his knowledge of both Medico's and his own affairs, petitioners' tax treatment of the conceded items is not plausible. Mr. Oria failed to use the

due care of a reasonable and ordinarily prudent person under like circumstances to insure that his own compensation from Medico was properly accounted for and reported.

The accuracy-related penalty does not apply to any part of an underpayment of tax if it is shown the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1). The determination of whether a taxpayer acted in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the extent of the taxpayer's effort to assess his proper tax liability. Id. The taxpayer bears the burden of proof that he had reasonable cause and acted in good faith with respect to the underpayment. Higbee v. Commissioner, supra at 447.

Petitioners defend against the accuracy-related penalty on the ground that they acted with reasonable cause and in good faith. They argue that the penalty should not apply because they relied on the advice of Mr. Loeser, a certified public accountant with extensive experience in preparing tax returns.

The general rule is that a taxpayer has a duty to file a complete and accurate tax return and cannot avoid that duty by placing responsibility with an agent. United States v. Boyle, 469 U.S. 241, 252 (1985); Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987). In limited situations, the good faith reliance on the advice of an independent, competent professional in the preparation of the tax return can satisfy the reasonable

cause and good faith exception. <u>United States v. Boyle</u>, <u>supra</u> at 250-251; <u>Weis v. Commissioner</u>, 94 T.C. 473, 487 (1990).  However, reliance on the advice of a professional tax adviser does not necessarily demonstrate reasonable cause and good faith.  Sec. 1.6664-4(b)(1), Income Tax Regs.  All facts and circumstances must be taken into account.  Sec. 1.6664-4(c)(1), Income Tax Regs.  The advice must be based upon all pertinent facts and the applicable law.  Sec. 1.6664-4(c)(1)(i), Income Tax Regs.  The advice must not be based on unreasonable factual or legal assumptions.  Sec. 1.6664-4(c)(1)(ii), Income Tax Regs.  The advice cannot be based on an assumption that the taxpayer knows, or has reason to know, is unlikely to be true.  <u>Id.</u>

At the close of the trial of this case, the Court instructed petitioners to address on brief the particular advice from Mr. Loeser on which they were relying to show reasonable cause and good faith with respect to each of the conceded items of underreported taxable income.  In their briefs, petitioners address only the transaction involving the fictitious payments to Mr. Loeser or one of his affiliates and resulting in the erroneous credits to Mr. Oria's drawing account.  We assume, therefore, that they concede their reasonable cause and good faith defense with respect to the remaining conceded items of underreported taxable income.  <u>Mendes v. Commissioner</u>, 121 T.C. 308, 312-313 (2003) ("If an argument is not pursued on brief, we may conclude that it has been abandoned.").

Petitioners concede that they underreported their 2000 taxable income in the amount of $248,524 by failing to report the total of the checks Mr. Oria received from Medico in that year. They claim that they did so on the advice of Mr. Loeser. They do not claim that Mr. Oria was not aware of the total of salary checks that, during 2000, he had signed on behalf of, and received from, Medico. They claim that they relied on Mr. Loeser to prepare a correct income tax return for them. Mr. Oria was aware that Medico was participating in a plan designed by Mr. Loeser under which Medico was paying Mr. Loeser money so that, Mr. Loeser claimed, Mr. Oria could save on taxes. A reasonably prudent person would not rely on an adviser having an interest in the subject of the advice. Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 99 (2000), affd. 299 F.3d 221 (3d Cir. 2002). Moreover, Mr. Oria made no attempt to understand the transactions Medico was engaging in to implement Mr. Loeser's plan. The detail of those transactions was spelled out in Medico's tax returns and the general ledger, yet Mr. Oria was uninterested in Mr. Loeser's explanation of those documents, regarding their contents as "mumbo jumbo numbers". The assumption underlying the erroneous credits posted to his drawing account was either that he had paid Mr. Loeser or one of his affiliates directly on Medico's behalf or that he had reimbursed Medico, which had paid Mr. Loeser or one of his affiliates. Had he paid attention to Mr. Loeser's explanations, Mr. Oria would have realized that the factual premises relied on by Mr. Loeser

were incorrect, since he had neither paid Mr. Loeser or one of his affiliates directly nor had he reimbursed Medico. A taxpayer cannot stick his head in the sand while an adviser explains the basis of his advice and pop it out only to hear the favorable conclusion. Considering all the facts and circumstances, we conclude, and find, that petitioners did not act with reasonable cause and in good faith in relying on Mr. Loeser to prepare a correct income tax return for them. The underpayment in tax attributable to the $248,524 in checks received from Medico and not reported on the Form 1040 is due to negligence, and there is not reasonable cause, nor did petitioners act in good faith, with respect to that portion of the underpayment.

We sustain the accuracy-related penalty determined by respondent with respect to petitioners' underpayment of tax for 2000.

<u>Decision will be entered under Rule 155</u>.